# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DONTAY CARTER-EL | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-14-2545 |
| SCOTT S. OAKLEY, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM

Defendants Bishop, Butler, Graham, Oakley, Tichnell, Wilt, and Woolford filed a motion to dismiss or, in the alternative, for summary judgment in response to the above-entitled civil rights action. ECF 21. Plaintiff opposes the motion. ECF 23, 27, and 28. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, defendants' motion, construed as a motion for summary judgment, shall be granted.

### Non-Dispositive Pending Motions

Also pending are plaintiff's motion to amend (ECF 19) and for extension of time (ECF 26) as well as defendants' motion for extension of time (ECF 20). The motions for extension of time filed by plaintiff and defendants shall be granted. Plaintiff's motion to amend the complaint seeks to add Stephen Moyer, Secretary of the Department of Public Safety and Correctional Services as an additional defendant. ECF 19. Plaintiff alleges that Moyer knowingly refused to protect his constitutional and statutory rights as it relates to his ability to access the courts, to exhaust administrative remedies, and to protect him from retaliatory action. *Id.* He names Moyer in his official capacity only. *Id.*

This court may deny a motion to amend a complaint when the proposed amendment is a futility. Futility is apparent if the proposed amended complaint fails to state a claim under the

applicable rules and accompanying standards: "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.* 637 F.3d 462, 471 (4th Cir. 2011), citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008). A claim against a government official in his official capacity is permissible for purposes of injunctive and declaratory relief, but requires proof the deprivation at issue was the result of official policy. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690 – 91 (1978). As set forth more fully below, there is no evidence that a deprivation occurred as a result of an official policy in the instant case, making the proposed amendment to the complaint a futility. The motion to amend shall therefore be denied.

## Plaintiff's Allegations

Plaintiff is an inmate committed to the custody of the Maryland Department of Public Safety and Correctional Services and incarcerated at North Branch Correctional Institution ("NBCI"). In July of 2011 plaintiff filed a grievance regarding continued mail problems at NBCI following a refusal by mail room staff to verify whether legal mail sent out by plaintiff via certified mail to the Circuit Court for Allegany County, Maryland had been processed. Plaintiff states he had complained about this issue over five times because his legal mail had been lost or sent out late. He claims the grievance filed in July of 2011 was filed because the mail room had again failed to send his legal mail out. ECF 1 at p. 4.

Plaintiff alleges that defendant Captain Butler is in charge of the NBCI mail room and that defendant Lt. Wilt refused to sign for, or acknowledge, plaintiff's administrative remedy procedure complaint ("ARP"). Plaintiff claims that Wilt had refused to do so on three prior occasions and that the mail room was forwarding plaintiff's legal mail to Wilt. ECF 1 at p. 4.

2

Plaintiff claims that defendants Scott Oakley, the Executive Director of the Inmate Grievance Office ("IGO"), Robin Woolford, the Deputy Director of the IGO, and Lenora Adegbesan, the administrative officer of the IGO, conspired to deny him a hearing on the merits of his grievance concerning the mail room. He further claims that on September 4, 2011, Adegbesan administratively dismissed his grievance (IGO No. 2011-1424), refusing to forward the matter to the Office of Administrative Hearings ("OAH") for a hearing. ECF 1 at pp. 4 – 5.

On July 19, 2011, plaintiff filed another ARP because the wardens of NBCI and Western Correctional Institution ("WCI") refused to put a system in place that enabled him to confirm or prove when his legal mail left the prison mail room. Plaintiff claims he did so because he has had "numerous appeals and condition of confinement challenges denied and dismissed because of the legal mail problems" at NBCI and WCI. ECF 1 at p. 5. Additionally, he states that Administrative Law Judge ("ALJ") Wayne A. Brooks issued a decision in IGO case number 2010-1964 suggesting that the Division of Correction ("DOC") and NBCI review their regulations to correct the existing problem. Despite that decision, plaintiff alleges the warden of NBCI refused to address or correct the problem; Butler and Wilt again refused to investigate; and defendant Paula Williams, the Associate Director of the IGO, acted "in concert" with Oakley, Woolford, and Adegbesan to deny a merits hearing on the ARP by administratively dismissing it on December 7, 2011. *Id.*

On August 10, 2011, plaintiff claims that Oakley, Woolford, Adegbesan, and Williams ("the IGO defendants") "continued their civil conspiracy" to deny a hearing on the merits of a claim (IGO No. 2011-1000) plaintiff filed after "another court case was dismissed because of the action of NBCI officials." ECF 1 at p. 5. Plaintiff claims the IGO defendants verified that his case was dismissed due to the conduct of NBCI case managers, but found an excuse to justify

their efforts to deny a hearing. *Id.* at p. 6.

On August 23, 2011, plaintiff claims Woolford again denied a merits hearing on another grievance (IGO No. 2011-1353), concerning his claim that he signed and paid for legal mail which never reached the Circuit Court for Allegany County or the Attorney General's Office. Plaintiff claims his judicial appeal was dismissed as a result of the non-delivery of his memorandum which he attributes to the conduct of NBCI mail room staff. Plaintiff asserts Butler controls the mail room at NBCI. ECF 1 at p. 6.

On September 27, 2014,[1] plaintiff filed another grievance (IGO No. 2011-2064), stating he had exhausted the ARP process. He claimed in his grievance that he had made "numerous unsuccessful attempts to have the mail room provide [him] with confirmation that [his] certified legal mail actually left this facility or when it left the facility." ECF 1 at p. 6. Plaintiff claims that despite the fact that the IGO defendants were aware of the fact that NBCI and WCI have one combined mail room, Woolford dismissed his grievance as moot citing his transfer to WCI. *Id.* at pp. 6 – 7.

On September 21, 2012, plaintiff states he filed a grievance (IGO No. 2012-2098) alleging that Bishop and Butler had repeatedly refused to comply with an order issued by the Secretary of Public Safety and Correctional Services in IGO No. 2010-1967, requiring them to provide plaintiff with the U.S. Postal Service receipts when he sends legal mail out by certified mail. Plaintiff states that he informed Bishop in the ARP that the problem had been ongoing for two years and cited the IGO case number. Plaintiff states that on June 27, 2012,[2] Bishop denied the ARP following Butler's statement that the mail room was in compliance with the order.

---

[1]     The complaint uses the 2014 date, however, the IGO case number plaintiff provides appears to designate this claim as being filed in 2011.

[2]     The date discrepancy, indicating the ARP was denied three months before it was filed, is reflected in the complaint and set forth here as alleged by plaintiff. ECF 1 at p. 7.

Plaintiff asserts that on December 3, 2012, Woolford dismissed the complaint on the same basis it was denied by Bishop. ECF 1 at p. 7.

On July 18, 2013, plaintiff claims Oakley administratively dismissed IGO No. 2012-2424, which was dated November 14, 2012; postmarked November 19, 2012; and not due until November 20, 2012. Plaintiff adds that Oakley was aware of the long documented problems with mail at NBCI and WCI, but again denied plaintiff a hearing on the merits of his claim. ECF 1 at pp. 7 – 8.

On October 17, 2012, plaintiff turned in and signed for legal mail to be sent out certified delivery (receipt no. 7010 3090 0001 3572 4543), which did not leave the mail room until October 24, 2012, resulting in an appeal being denied. On February 11, 2013, plaintiff submitted legal mail to be sent to the Allegany County Circuit Court by certified mail (receipt no. 7012 2210 0001 5121 3383), which did not leave the mail room until March 4, 2013. On April 12, 2013, plaintiff mailed an administrative agency decision appeal to the Circuit Court by certified mail (receipt no. 7012 2210 0001 5121 4465), for which he paid a fee of $5.02, and that mail did not leave the mail room until April 26, 2013, resulting in the appeal being dismissed. On May 15, 2013, plaintiff submitted legal mail for delivery by certified mail (receipt no. 7012 2210 0001 5121 4465),[3] which did not leave the mail room until May 20, 2015. ECF 1 at p. 8.

Following the noted failures to promptly process his legal mail, plaintiff filed a grievance (IGO No. 2013-1043) on June 11, 2013, noting it was an ongoing and continuing problem with outgoing mail at WCI. Plaintiff states that Oakley "continued his tortious interference with [his] right to a hearing on the merits" of his grievance and that Oakley has led a campaign to prevent

---

[3]     Plaintiff provided the same receipt number for the April 12, 2013 mail and the May 15, 2013 mail. ECF 1 at p. 8.

plaintiff from succeeding in his efforts to obtain a remedy for injuries he has suffered from DOC officials. ECF 1 at pp. 8 – 9.

Plaintiff asserts he filed ARP-WCI-1440-13 alleging Correctional Officer J. Snyder engaged in filing false reports and retaliation[4] and exhausted the process before filing a grievance on the issue. The grievance (IGO No. 2013-2122) indicated that the problem with Snyder had been ongoing for approximately 18 months. Plaintiff claims he has a right under Code of Maryland Administrative Regulations ("COMAR") 12.07.01.05F to a hearing so he could prove by a preponderance of the evidence that his claim was meritorious, but the IGO defendants again denied him a hearing on the merits. ECF 1 at p. 9.

On February 7, 2014, plaintiff filed an ARP (WCI-1533-13) "over retaliation and mail tampering". ECF 1 at pp. 9 – 10. Plaintiff appealed the ARP to the IGO (IGO No. 2014-0349), alleging that "Bishop refused to comply with statutory obligations in accordance with Corr. Serv. Art. 3-211, because he is in fact responsible for enforcing the policy and regulations of the DPSCS." *Id.* at p. 10. Plaintiff reiterated that he had repeatedly complained about "this retaliation" and issues regarding mail, but Bishop had refused to do anything about it. *Id.* Oakley refused to refer the matter to the OAH for a merits hearing. *Id.*

On October 23, 2013, plaintiff filed ARP WCI-1648-13 claiming "another access to courts violation." ECF 1 at p. 10. Plaintiff claimed that the lack of a written policy or guideline to establish the time frame for copies of legal papers to be returned by the case manager and setting out the manner in which they are returned violated his right to access the courts. He asserted that legal documents are time-sensitive and that he "can't afford for them to be either late or lost." *Id.* In response to the ARP, plaintiff states that defendant Tichnell denied the requested relief and dismissed the complaint. Plaintiff claims that as the Case Management

---

[4]        Plaintiff does not specify the specific allegations against Snyder. ECF 1 at p. 9.

Manager it is Tichnell's responsibility to provide a written policy setting forth the procedures noted and "to protect segregation inmate's (sic) rights to access the court by timely participating in the cases." *Id.* On January 13, 2014, plaintiff appealed the dismissal of the ARP to the IGO, but at the time he filed the instant complaint with this court[5] IGO defendants had not acknowledged receipt of the grievance which effectively denies plaintiff a hearing on the merits of the claim. ECF 1 at p. 10.

On September 17, 2013, plaintiff received a hearing in the Allegany County Circuit Court on a petition for writ of mandamus. The state court granted the writ and required Bishop to abide by the Secretary's order in IGO No. 2010-1967 (requiring that plaintiff be provided with certified mail receipts from the postal service), but did not address the issue of damages. Plaintiff filed a grievance (IGO No. 2013-1774) to seek recovery of all the costs incurred by him when he paid for certified mail and never received the receipts for which he paid. On November 26, 2013, Oakley began a preliminary investigation on the grievance, asking plaintiff to provide both a copy of the state court's decision granting the writ of mandamus as well as the petition plaintiff had filed. Plaintiff states he sent the requested documents to Oakley along with a letter chastising Oakley and the IGO for not addressing this matter when it was brought to their attention previously. As of the date plaintiff filed the instant complaint in this court, no acknowledgment of receipt of the requested documents had been received from the IGO defendants. Plaintiff claims this failure to acknowledge receipt is in "furtherance of the conspiracy to deny [him] a hearing on the merits of his complaint." ECF 1 at p. 11.

Plaintiff claims that Bishop has "openly defied DOC regulations, directives, DPSCS orders, and Maryland law" over the course of two years and has refused to protect plaintiff's right of access to the courts. ECF 1 at p. 11. He further claims that Bishop has failed to protect

---

[5]     The complaint was filed with this court on August 8, 2014, and is dated July 3, 2014. ECF 1 at p. 16.

him from retaliatory actions by prison staff because of his "successful representation of other inmates" and of himself. *Id.* at p. 12. Plaintiff alleges he has lost at least ten appeals in the Maryland Court of Special Appeals, Court of Appeals, and Circuit Court for Allegany County because of Bishop's conduct as well as Captain Butler's action or inaction from 2010 to present. He further alleges that Butler has complete control over the mail room and "is the only person still working today who has physically accessing (sic) the mail room when these problems first arose in 2006." *Id.*

Plaintiff's "legal claims" against defendants are as follows. He asserts that Bishop and Butler violated his right of access to courts by intentionally and repeatedly ignoring orders and directives to correct problems with the mail room. Lt. Wilt is alleged to have lost or thrown away plaintiff's legal mail and repeatedly refused to sign receipts for plaintiff's ARPs, interfering with his right of access to the courts and to exhaust administrative remedies. Plaintiff further asserts that Wilt engaged in retaliatory actions by this conduct. Plaintiff alleges the IGO defendants conspired to deny his right of due process as well as statutory rights to a hearing on his claims by dismissing his grievances as wholly lacking in merit on its face. He further claims that the IGO defendants were retaliating against him for his successful representation of other inmates at grievance hearings. Plaintiff asserts that defendants Richard Graham, the warden of WCI, and James Tichnell, are fully aware of a prisoner's right of access to courts as well as the long standing problems with outgoing mail at WCI, but refused to correct the problem or to issue a written policy. ECF 1 at pp. 13 – 14.

As relief, plaintiff seeks a declaratory judgment stating that the defendants violated his constitutional rights as well as the laws of Maryland; an injunction ordering defendants to stop

8

efforts to block plaintiff's outgoing legal mail and all retaliatory acts; and compensatory and punitive damages. ECF 1 at p. 15.

## Defendants' Response[6]

Defendants state that plaintiff arrived at WCI on December 7, 2011, and is serving a sentence of life without the possibility of parole. ECF 21 at Ex. 1. He was assigned to administrative segregation from July 10, 2014 through October 1, 2014, and as of January 14, 2015, has been assigned to disciplinary segregation. *Id.*

It is the policy at WCI that all inmates including those assigned to administrative or disciplinary segregation are provided access to mail. This includes the ability to send items by certified mail with return receipts. Incoming legal mail is opened in front of the inmate to whom it is addressed and a signature from the inmate acknowledging that this procedure was followed is obtained. ECF 21 at Ex. 2.

The daily operation of the WCI mail room is the responsibility of the mail room clerks who work for WCI and includes sending the outgoing mail from inmates out and sorting the incoming mail addressed to inmates assigned at the institution. Defendants confirm that both WCI and NBCI share a mail room, but clarify that different clerks are responsible for handling mail for the prison where they are employed. Neither case managers or supervisory prison officials are involved in the day-to-day operation of the mail room. ECF 21 at Ex. 2. Further, defendants state that while correctional officers monitor incoming mail for contraband, neither defendant Butler or Wilt handle incoming or outgoing mail. *See* ECF 21 at Ex. 3 (declaration of Butler) and Ex. 4 (declaration of Wilt).

---

[6]     Defendants Paula Williams and Lenora Adegbesan were not served with the complaint. Williams is retired from the IGO and Adegbesan is deceased. ECF 21-1 at p. 2, n. 3. The claims against them shall be dismissed without requiring service.

Butler, who has been the Chief of Security at WCI since October of 2011, is responsible for overseeing the security of the entire institution and, in that capacity, he is only responsible for insuring that incoming mail is properly inspected by staff for contraband or potential threats to security at WCI. ECF 21 at Ex. 3. Butler further avers that during the time he has been Chief of Security at WCI, plaintiff has smuggled or attempted to smuggle contraband into WCI through the mail.[7]  Id.  While Butler was an institutional investigator at WCI for ten years, his duties in that capacity did not include personally signing ARP paperwork, but did include overseeing the ARP process. Id.

Defendant Wilt is the Housing Unit 1 manager at NBCI. He is not employed at WCI and has nothing to do with mail distribution at WCI, nor is he involved in handling the day-to-day operations of mail at NBCI. Additionally, as Wilt is a correctional officer at NBCI, he has no involvement with processing ARPs filed by inmates at WCI. ECF 21 at Ex. 4.

Defendant James Tichnell is the Case Management Manager at WCI and supervises the case management department. Tichnell states that when inmates assigned to segregation want copies made of legal papers, they must submit a written request to their assigned case manager. He further states that request slips are available on housing unit tiers and are handled promptly. This procedure and general information regarding copy work and the fees charged are included in the Inmate Handbook, issued to all inmates at WCI. In the event an inmate is uncertain about the policy or procedures in place, they may seek clarification in writing from their case manager. ECF 21 at Ex. 5.

Defendant Oakley, the Executive Director of the IGO, states that he exercises quasi-judicial authority to conduct preliminary reviews of complaints filed with his office to determine

---

[7]     Butler does not provide details of plaintiff's attempts to smuggle contraband into WCI in his declaration under oath. ECF 21 at Ex. 3.

whether the matter warrants a hearing on the merits. Oakley also delegates that authority to other staff at the IGO, to include Deputy Director Robin Woolford. Oakley is appointed to his position by the Secretary of Public Safety and Correctional Services pursuant to Md. Code Ann., Corr. Serv. § 10-203. ECF 21 at Ex. 6; *see also* Md. Code Ann., Corr. Serv. §§10-206 and 10-216.

**Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Discovery

Plaintiff asserts that discovery is required in order for him to frame an adequate response to defendants' dispositive motion. He claims there are documents that are public records and are not security related which he cannot afford to obtain on his own and are necessary to refute the claims asserted by defendants. ECF 23.

An affidavit pursuant to Fed. R. Civ. Proc. 56(d) is appropriate where a motion for summary judgment has been filed and the nonmovant, plaintiff in this instance, "shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition." Fed. R. Civ. Proc. 56(d). Plaintiff's affidavit is inadequate to establish the need for discovery as he has not set forth the facts essential to justify his opposition. His broad assertion that there are documents that exist which refute defendants' claims is simply not enough to require defendants to engage in discovery. He has neither identified the documents, nor explained what facts would be established by the documents in question. ECF 23. Additionally, the court notes that plaintiff filed an opposition response that includes over 200 pages of exhibits. ECF 27. Plaintiff's request for discovery pursuant to Rule 56(d) is denied.

## Analysis

### Statute of Limitations

There is no specific statute of limitations set forth in 42 U.S.C. §1983, "but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007), citing *Owens v. Okure*, 488

12

U.S. 235, 249-250, (1989); *Wilson v. Garcia,* 471 U.S. 261, 279-280, (1985). In Maryland the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Code Ann., Cts & Jud. Proc.§ 5-101.

The instant complaint is deemed filed on the date plaintiff surrendered control of the complaint to prison officials for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *Lewis v. Richmond City Police Department,* 947 F.2d 733, 734-35 (4th Cir. 1991); *United States v. Dorsey,* 988 F. Supp. 917, 919-920 (D. Md. 1998). Liberally construing this rule in plaintiff's favor, the court presumes that date is the date plaintiff signed the complaint, July 3, 2014. ECF 1 at p. 16. Given the nature of the claims asserted, the postmark date or the date the complaint was received in this court, will not be relied upon for purposes of determining the filing date.

Several of plaintiff's allegations pertain to claims occurring more than three years before July 3, 2014. Defendants assert those claims are time-barred and must be dismissed. ECF 21. Plaintiff does not address the statute of limitations issue in his opposition response; instead he appears to rely on a theory that the course of conduct was ongoing and therefore is not time-barred. ECF 27. To the extent factual background is offered to establish a pattern of conduct, the allegations that are time-barred shall be considered in that context only.

### Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

13

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 352-352.

In *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), the Court characterized access-to-the courts claims as being in one of two categories. *Id* at 413. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when a plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id.* at 1209. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress'" in the courts. *Id.* (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a non-frivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir.

2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.*

In the instant case plaintiff has described at great length the conduct he alleges defendants engaged in to frustrate his attempts to litigate his claims regarding conditions of confinement. The substance of those claims, however, are not provided outside of his claims that the mail room staff were not verifying when his legal mail left the prison and were not providing him with return receipts for items sent certified mail. *See* ECF 27.

Plaintiff successfully challenged the practice of denying access to certified mail receipts in an IGO complaint filed in 2010. ECF 27-5. In that case, prison officials admitted that inmates did not get the certified mail receipts back when they mailed something by certified mail, but were offered a tracking report printed from the U.S. Postal Service website for an additional fee of fifteen cents. ECF 27-5 at p. 6. The Administrative Law Judge agreed with plaintiff that since he paid for the receipts he should get them back and for the fourteen letters plaintiff had sent by certified mail between January and October of 2010, he should be provided tracking information free of charge. The meritorious finding was approved by the Secretary of the Department of Public Safety and Correctional Services on March 1, 2012. *Id.* Despite this decision, plaintiff was still denied certified mail receipts. ECF 27-8. Ultimately, plaintiff filed an action in mandamus in the Circuit Court for Allegany County. ECF 27-9. The state court

found that Warden Shearin's testimony indicated he was disinterested in seeing that plaintiff got the receipts and was defying the Secretary's order. *Id.* at p. 2. In a decision dated September 17, 2013, the state court granted mandamus. *Id.* In short, plaintiff was successful in challenging a policy in place at WCI regarding certified mail receipts. This is not evidence that plaintiff was denied meaningful access to the courts; rather, it is evidence to the contrary.[8] Failure to provide plaintiff with the certified receipts, without more, is not a denial of meaningful access to the courts.

While plaintiff provides several examples of instances where legal pleadings were not received by the court where he mailed them for filing, those instances without more do not establish a constitutional claim. *See* ECF 27-12 (April 12, 2012 Maryland Court of Special Appeals order dismissing appeal for failure to file brief and record extract); ECF 27-24 at pp. 5 - 6 (correspondence indicating that a memorandum was not received by the Circuit Court for Allegany County); ECF 27-25 at p. 67 (April 15, 2014 Maryland Court of Special Appeals order dismissing appeal for failure to file nine copies of a corrected brief and record extract); ECF 27-25 at p. 68 (notation from Circuit Court for Allegany County indicating memorandum had not been received); ECF 27-25 at p. 69 (July 15, 2014 Allegany County Circuit Court order dismissing petition for judicial review for failure to pay filing fee and demonstrate exhaustion); ECF 27-25 at p. 70 (July 30, 2014 Allegany County Circuit Court order denying motion to alter or amend as untimely filed); and ECF 27-25 at p. 71 (April 21, 2014 Allegany County Circuit Court order granting unopposed motion to dismiss).[9] Without providing evidence that each of

---

[8]    The same is true for plaintiff's successful claim regarding the provision of locked storage for his property while assigned to segregation. *See* ECF 27-13 at pp. 1 – 11. As a prisoner, plaintiff does not have a constitutionally protected interest in personal property. Nevertheless, his ability to redress his grievance concerning the safekeeping of his property was clearly not impaired in that case.

[9]    This court notes that in the Circuit Court for Allegany County alone, plaintiff has filed 62 cases. *See* http://casesearch.courts.state.md.us/inquiry.

the dismissed claims concerned a constitutional claim regarding conditions or was a challenge to

the validity of plaintiff's conviction and evidence that defendants were at fault for the missed

deadlines,[10] there is no viable claim for denial of access to the courts. Plaintiff has failed to

describe the nature of the claims asserted in the cases he lost as a result of missing deadlines for

filing required pleadings. To the extent the claims asserted pertain to the failure of prison

officials to abide by applicable directives governing administrative remedies, those claims are

not constitutional claims regarding conditions of confinement.[11] A claim of denial of meaningful

access to the courts is not a catch-all claim encompassing any and all deterrents or obstacles to

litigation of all issues that touch upon prison life in general.

Moreover, any claim that defendants' failure to accommodate plaintiff's efforts to

exhaust administrative remedies does not state a claim of denial of meaningful access to the

courts. The Prison Litigation Reform Act ["PLRA"] requires a prisoner to exhaust administrative

remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action

shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal

law by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." The Supreme Court has interpreted the

language of this provision broadly, holding that the phrase "prison conditions" encompasses "all

---

[10]     Of particular note with regard to delays in legal mail, plaintiff submits an affidavit from defendant Scott
Oakley which was filed in one of plaintiff's state court cases in Allegany County. ECF 27-19 at pp. 1- 2. In that
affidavit, Oakley addresses plaintiff's claim that the administrative record was not received despite the fact it had
been mailed to plaintiff. Oakley explains the record was mailed on December 16, 2011, to plaintiff at NBCI, but
plaintiff had been transferred to WCI on December 7, 2011. Notwithstanding the incorrect address, the package was
in fact delivered to plaintiff at WCI, but he was not required to sign for it as is required for legal mail because the
mail room staff who delivered it did not realize it was legal mail. Subsequent to its delivery, plaintiff was heard in a
recorded phone call acknowledging that he had received the documents, but that staff could not prove he had
received it absent his signature. Additionally, plaintiff's cell was searched and the documents were located in his
cell. ECF 27-19 at pp. 1 -2. Thus, plaintiff's own evidence refutes his allegation that all delays were the fault of
prison staff.

[11]     Plaintiff's claims that a written policy is required to establish time guidelines for receiving requested copies
back from case management is not a federal constitutional claim, where, as here, there is no evidence that the failure
to establish a written policy has impacted his ability to file and pursue meritorious legal claims.

17

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

A failure to exhaust administrative remedies entitles defendant prison officials to dismissal of the claims against them, but only upon proof that exhaustion has not taken place and is not due to their failure to abide by the regulations in place or otherwise did not thwart the plaintiff's attempt to avail himself of administrative remedies. *See Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 681 (4th Cir. 2005) (failure to exhaust is an affirmative defense). Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

To the extent any of plaintiff's underlying conditions of confinement claims were not properly processed, that factor alone did not preclude plaintiff from pursuing a constitutional claim in this court. *See Jones v. Bock*, 549 U.S. 199, 216-17 (2007) (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints).

18

This court has addressed claims raised by prisoners, despite the assertion of the affirmative defense of non-exhaustion, where it is clear that the failure to obtain any meaningful administrative review was through no fault of the prisoner litigant. Additionally, an appeal to the state circuit court of the IGO decision denying review or relief is not a required step in administrative exhaustion. *See Chase v. Peay*, 286 F.Supp. 2d 523, 530 (D. Md. 2003) (Exhaustion is established by demonstrating appeal through the IGO). Defendants are entitled to summary judgment in their favor on plaintiff's claim he was denied meaningful access to courts.

Retaliation Claim

In order to prevail on a claim of retaliation, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's

rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACL U of Maryland, Inc. v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994).

Plaintiff claims that due to the numerous instances where he successfully challenged prison policies and represented other inmates in adjustment hearings, Warden Bishop created an atmosphere of retaliation which facilitated plaintiff being falsely accused of rule violations and in his placement in segregation housing. Specifically, plaintiff claims that following the issuance of mandamus relief by the Circuit Court for Allegany County, he was charged with an incident the staff knew he was not involved in and his typewriter was broken. ECF 27-10 at p. 3; ECF 27-25 at pp. 4 – 6; and ECF 27-25 at pp. 19 – 21. Plaintiff claims that Officer Snyder falsely accused him of using or possessing drugs and on September 22, 2013, broke plaintiff's typewriter. ECF 27-25 at p. 6. In support of his allegations regarding Snyder, who is not named as a defendant in this case, plaintiff offers a declaration under oath from another inmate, Larry Pearson. *Id*. at pp. 19 – 21. According to Pearson, Snyder falsely accused Pearson of a rule violation in an effort to pressure him into voting plaintiff out of his position as an inmate representative for the housing unit. *Id*. Even assuming all of the allegations regarding Snyder's conduct are true, Snyder is not a named defendant and Bishop is not liable for Snyder's conduct

under a *respondeat superior* theory.[12]  Plaintiff has also not alleged facts sufficient to find Bishop liable as a supervisory official.

Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir.2001) citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984). Supervisory liability under §1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994).  Here, there is no evidence, other than plaintiff's own assertions, that Bishop knew Snyder was retaliating against plaintiff through false accusations.  The determination of plaintiff's guilt of the disciplinary charges require proof at an adjustment hearing[13] and plaintiff has not established a constitutional injury resulting from the loss of his typewriter.

The other forms of retaliation plaintiff appears to assert include the refusal to abide by directives governing the investigation of his ARPs and the failure to interview him; loss of his institutional job assignment after it was erroneously reported that he tested positive for illicit

---

[12]     It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under § 1983).

[13]     Plaintiff does not include an allegation that he was found not guilty of the charges brought by Snyder against him.

drug use; assignment to administrative segregation; and delays in sending his mail out of the institution. Plaintiff also claimed his assignment to segregation was retaliatory in a prior case filed in this court. *Carter v. Assistant Warden Denise Gelsinger, et al.*, Civil Action JFM-14-2264 (D. Md.). In that case it was revealed that plaintiff's assignment to segregation was due to the fact that on December 23, 2014, Lt. Jeffrey Shimko intercepted a large envelope plaintiff had marked as legal mail and attempted to mail out of the prison, which was discovered to contain instructions directing individuals to smuggle cocaine, synthetic marijuana, and prescription drugs back into the prison using hidden pockets in the envelope. *Id.* at ECF 23, Ex. 1. In denying plaintiff's motion for temporary restraining order which sought to require his removal from segregation, this court cautioned plaintiff that false swearing in court documents would not be tolerated and further observed:

> The motion, supported by plaintiff's declaration under oath, is not only frivolous, it is based on fabricated allegations of retaliation and retribution. It is clear from the pleadings filed by plaintiff that he is highly intelligent and the reason for his placement on disciplinary segregation was in fact known to him when he filed the motion for temporary restraining order.

*Id.* at ECF 27, p. 4.

Additionally, this court found that plaintiff's assignment to administrative segregation after he was alleged to have threatened a former friend of his, resulting in an action against him for a restraining order, together with the allegation he attempted to smuggle contraband into the prison, was a legitimate non-retaliatory reason for his assignment. *Id.* at pp. 12 – 13. The existence of a legitimate security concern defeats plaintiff's claim of retaliation.

With regard to the issues of mail delays and inadequate investigations into his ARPs, plaintiff offers evidence that establishes that these problems are not unique to him. Specifically, plaintiff submits as an exhibit a decision issued by the IGO on May 31, 2011, for a grievance

filed by inmate James Calhoun-El, who claimed there were delays in receiving his mail. ECF 27-18 at p. 5. The administrative law judge took judicial notice of the fact that there had been several other cases filed concerning the failure to process mail in a timely manner at NBCI. *Id.* In addition, the administrative law judge observed that while the investigator concluded the delay was the fault of the United States Postal Service, it was clear the investigator did not talk to anyone to reach that conclusion. *Id.* Plaintiff is clearly not a target for delays in mail delivery as part of some retaliatory scheme against him, nor has he been targeted for inadequate investigations of his claims. Further, his claims that staff at the IGO are intentionally dismissing his grievances on preliminary review in retaliation for his successful litigation is refuted by the evidence plaintiff submits in other cases where the Circuit Court for Allegany County remanded a case to the IGO because it was improperly dismissed on preliminary review. *See* ECF 27-25 at p. 15 - 17. Defendants are entitled to summary judgment on the claims of retaliation.

A separate order follows.


Date _11/10/16_                         J. Frederick Motz
                                        United States District Judge

BY_____ DEPUTY
CLERK'S OFFICE
AT BALTIMORE
2015 NOV 10 AM 11: 53
DISTRICT OF MARYLAND
U.S. DISTRICT COURT
FILED